# In the United States Court of Federal Claims

No. 18-287C

(E-Filed: January 14, 2021)

|  |  |  |
|---|---|---|
| AARON OLSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Motion for Partial Dismissal; Lack of |
| v. | ) | Subject Matter Jurisdiction; RCFC |
| | ) | 12(b)(1); Privity of Contract. |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

James A. Perkins, Yakima, WA, for plaintiff.  D.R. (Rob) Case, of counsel.

Borislav Kushnir, Trial Attorney, with whom were Joseph H. Hunt, Assistant Attorney General, Robert E. Kirschman, Jr., Director, Steven J. Gillingham, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.  Stephanie Lynch and Duane Mecham, United States Department of the Interior, of counsel.

OPINION AND ORDER

CAMPBELL-SMITH, J.

     Before the court is defendant's motion for partial dismissal.  See ECF No. 35. Defendant contends that this court lacks jurisdiction to consider claims made by some of the plaintiffs, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), and in the alternative, moves to dismiss the claims for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6).  In ruling on the motion, the court also considered:  (1) plaintiffs' amended complaint, ECF No. 34; (2) plaintiffs' response, ECF No. 36; (3) the declaration of D.R. (Rob) Case, ECF No. 37; (4) defendant's reply, ECF No. 40; (5) defendant's supplemental brief in support of its motion to dismiss, ECF No. 46; and (6) plaintiff's response to defendant's supplemental brief, ECF No. 47.

     The motion is now fully briefed and ripe for ruling.  The court has considered all of the arguments presented by the parties and addresses the issues that are pertinent to the

court's ruling in this opinion.  For the following reasons, defendant's motion for partial dismissal is **GRANTED**.

I.   Background

Plaintiffs in this case "were customers of the Wapato Irrigation Project [(WIP)] during the 2013 crop season." ECF No. 34 at 4.  The WIP delivered irrigation water to customers within the boundaries of the Yakama Indian Reservation, which is in south-central Washington State.  See id. at 3.  Plaintiffs allege that, at all relevant times, the WIP was operated by the Bureau of Indian Affairs (BIA), which is part of the United States Department of the Interior (DOI).  See id. at 4.

In the amended complaint, fifteen plaintiffs seek compensation related to several parcels of land serviced by the WIP.  See id. at 1, 4.  Plaintiffs divide themselves roughly into two categories:  (1) those who own property serviced by the WIP, or fee lands; and (2) those who lease property held in trust by defendant for individual members of the Yakama Indian Nation and serviced by the WIP, or trust lands.[1]  See id. at 3, 5-6.  According to the amended complaint, each plaintiff—whether an owner or a leaseholder—was "a party to one or more express or implied contracts with [defendant].  Such express or implied contracts obligated [defendant], via its [WIP], to deliver irrigation water to each Claimant's land in proportionate amounts in exchange for the Claimants' payment of their respective monetary assessments." Id. at 4-5.  Plaintiffs allege that they paid their "respective monetary assessments in full." Id. at 5.  Nevertheless, the WIP "failed to deliver proportional irrigation waters" to plaintiffs, causing them to suffer financially.  Id.

Plaintiffs include voluminous attachments to the amended complaint, eleven of which are lease or permit documents.  See ECF No. 34-1 (Exhibit A); ECF No. 34-2 (Exhibit B); ECF No. 34-3 (Exhibit C); ECF No. 34-4 (Exhibit D); ECF No. 34-17 (Exhibit Q); ECF No. 34-18 (Exhibit R); ECF No. 34-21 (Exhibit U); ECF No. 34-25 (Exhibit Y); ECF No. 34-26 (Exhibit Z); ECF No. 34-29 (Exhibit CC); ECF No. 34-32

---

[1]   In its motion to dismiss, defendant counts thirty-six parcels at issue, seventeen of which are trust lands.  See ECF No. 35 at 10.  In their response, plaintiffs state that there are thirty-seven parcels at issue, eighteen of which are trust lands.  See ECF No. 36 at 9.  The court has reviewed the amended complaint and the parties' briefs, but the source of this discrepancy is not apparent.  Because the court's legal reasoning does not depend on such precise identification, the parties will have an opportunity to clarify which parcels are affected by the decision at a later time.  The court also notes that plaintiff attaches only eleven leases to its amended complaint.  See generally ECF No. 34; ECF No. 36 at 9 n.3 (noting that plaintiffs were unable to locate all of the relevant leases).  The court makes no ruling on the legal effect of leases that have not been presented to the court.

(Exhibit FF). Each of these documents states that the lease or permit is a contract entered into "by and between the Indian or Indians named below (the Secretary of the Interior acting for and on behalf of the Indians) hereinafter called the 'landlord,'" and an individual tenant. ECF No. 34-1 at 2; ECF No. 34-2 at 2; ECF No. 34-3 at 2; ECF No. 34-4 at 2; ECF No. 34-17 at 2; ECF No. 34-18 at 2;[2] ECF No. 34-21 at 2; ECF No. 34-25 at 2; ECF No. 34-26 at 2; ECF No. 34-29 at 2; ECF No. 34-32 at 2.

Plaintiffs allege that these lease or permit documents were contracts entered into between plaintiffs and "the [WIP], which contracts included specific water rights/allotments to be fulfilled by the [WIP]." ECF No. 34 at 8, 23, 27, 32, 34, 39, 45. According to plaintiffs, their "water rights/allotments arose via [these] written contracts," which "obligated the [WIP] to supply each respective Claimant with a proportionate amount of irrigation water from the aggregate waters possessed and controlled by the [WIP] during the crop year of 2013." Id. at 47. Plaintiffs further allege that the WIP's failure to deliver the appropriate amount of water was a breach of the lease and permit contracts. See id. And, plaintiffs contend, defendant "is liable and accountable for all such breaches." Id. Plaintiffs also argue that the WIP's failure to provide adequate water violated "statutes and/or regulations," for which defendant is also liable.[3] Id. at 50.

In response to the amended complaint, defendant filed a motion to dismiss the claims made by plaintiffs who hold leases or permits on the trust lands at issue. See ECF No. 35 at 7. According to defendant, "plaintiffs cannot establish this [c]ourt's subject-matter jurisdiction over claims related to trust lands, because plaintiffs are not in privity of contract with [defendant] and the statutes and regulations that plaintiffs cite are not money-mandating." Id. Defendant's argument hinges on the structure of the leases. As noted above, the leased property is property that is held in trust for either the Yakama Indian Nation or individual members of the Tribe. See id. at 9 (citing Brendale v. Confederated Tribes & Bands of Yakima Indian Nation, 492 U.S. 408, 415 (1989)). "[E]ach lease or permit is entered into by two parties: one of the plaintiffs as tenant or

---

[2] Exhibit R is a permit rather than a lease, and as such, the language is slightly modified to indicate that the contract is entered into "by and between the Indian or Indians named below (the Secretary of the Interior acting for and on behalf of the Indians) hereinafter called the 'permitter,'" and an individual permittee. See ECF No. 34-18 at 2. Because the parties make no legal distinction between the leases and the permit with regard to the issues raised in this case, the court treats all of the contracts as a group in this opinion.

[3] In their response to defendant's motion to dismiss, plaintiffs raise a third theory for recovery based on appurtenant water rights. See ECF No. 36 at 18-19. Plaintiffs state that "[e]nforcement of the appurtenances would be separate and distinct from trying to enforce the actual leases and permits against the defendant." Id. at 19. Plaintiffs, however, do not allege any such rights in the amended complaint. See generally ECF No. 34. Accordingly, plaintiffs' claims to recover based on appurtenant water rights, separate from any recovery under the contracts at issue, are not properly before the court and are not further addressed in this opinion.

permittee, and 'the Indian or Indians named below (the Secretary of the Interior acting for and on behalf of the Indians)' as landlord or permitter." Id. at 10 (citing the eleven leases attached to plaintiffs' complaint). In addition, according to defendant, "each lease or permit embodies an agreement to lease land for cultivation purposes, without mentioning [defendant's] obligation to provide irrigation water." Id.

Defendant also argues, in the alternative, that plaintiffs have failed to state a claim on which relief may be granted with regard to the leased properties: "even if plaintiffs could somehow establish jurisdiction, they fail to state a claim because no cited contractual, statutory, or regulatory obligation compels [defendant] to deliver irrigation water to plaintiffs." Id. at 7.

II.     Legal Standards

Pursuant to the Tucker Act, the court has jurisdiction to consider "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). To invoke the court's jurisdiction, plaintiffs must show that their claims are based upon the Constitution, a statute, or a regulation that "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." United States v. Mitchell, 463 U.S. 206, 217 (1983) (quoting United States v. Testan, 424 U.S. 392, 400 (1976)); see also Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (stating that to fall within the scope of the Tucker Act "a plaintiff must identify a separate source of substantive law that creates the right to money damages") (citations omitted).

Plaintiffs bear the burden of establishing this court's subject matter jurisdiction by a preponderance of the evidence. See Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). In reviewing plaintiffs' allegations in support of jurisdiction, the court must presume all undisputed facts are true and construe all reasonable inferences in plaintiffs' favor. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-15 (1982); Reynolds, 846 F.2d at 747 (citations omitted). If, however, a motion to dismiss "challenges the truth of the jurisdictional facts alleged in the complaint, the . . . court may consider relevant evidence in order to resolve the factual dispute." Reynolds, 846 F.2d at 747. If the court determines that it lacks subject matter jurisdiction, it must dismiss the complaint. See RCFC 12(h)(3).

4

III.    Analysis

    A.    Plaintiffs Are Not in Privity with Defendant

The United States Court of Appeals for the Federal Circuit "has consistently held that for the government to be sued on a contract pursuant to the Tucker Act, there must be privity of contract between the plaintiff and the United States." Chancellor Manor v. United States, 331 F.3d 891, 899 (Fed. Cir. 2003). "This is so because the doctrine of sovereign immunity precludes a suit against the United States without its consent and because, under the Tucker Act, the United States has 'consent[ed] to be sued only by those with whom it has privity of contract.'" Normandy Apartments, Ltd. v. United States, 100 Fed. Cl. 247, 254 (2011) (quoting Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1263 (Fed. Cir. 2005)). As such, "finding a lack of privity deprives this court of jurisdiction." Id. (citations omitted).

According to defendant, both the express language of the contracts at issue and binding precedent from the Supreme Court of the United States and the Federal Circuit, preclude plaintiffs from establishing the requisite privity to support this court's jurisdiction. See ECF No. 35 at 14-15. As an initial matter, each of the contracts states that it was entered into "by and between the Indian or Indians named below (the Secretary of the Interior acting for and on behalf of the Indians) hereinafter called the 'landlord,'" and an individual tenant. ECF No. 34-1 at 2; ECF No. 34-2 at 2; ECF No. 34-3 at 2; ECF No. 34-4 at 2; ECF No. 34-17 at 2; ECF No. 34-18 at 2; ECF No. 34-21 at 2; ECF No. 34-25 at 2; ECF No. 34-26 at 2; ECF No. 34-29 at 2; ECF No. 34-32 at 2. The plain meaning of this contract language indicates that the Secretary of the Interior was acting as an agent on behalf of the Indian landlords, and was not directly assuming obligations for defendant.[4]

Long-standing precedent from the Supreme Court, along with more recent binding precedent from the Federal Circuit, makes clear that the exercise of such agency does not place plaintiffs in privity with defendant. In United States v. Algoma Lumber Co., 305 U.S. 415 (1939), the Supreme Court considered whether the defendant incurred any obligations to the plaintiffs when the Superintendent of the Klamath Indian School executed, and the Assistant Secretary of the Interior approved, contracts for the purchase of timber from Indian-owned land on behalf of members of the Klamath Indian Tribe. In that case, each contract at issue stated that it was "entered into 'between the

---

[4]     The court also notes that there is a provision in the contracts, not discussed by the parties, which provides: "Nothing contained in this lease shall operate to delay or prevent a termination of federal trust responsibilities with respect to the land by the issuance of a fee patent or otherwise during the term of this lease; however, such termination shall not serve to abrogate this lease." E.g., ECF No. 34-1 at 3. The fact that the contract contemplates the end of defendant's trust responsibilities, but specifically states that such a change would not abrogate the lease, is further evidence that defendant has not assumed direct contractual obligations.

5

Superintendent of the Klamath Indian School, for and on behalf of the Klamath Indians, party of the first part' and the Lumber Company, 'party of the second part.'" Id. at 421. Based on this language, the Supreme Court concluded that "[n]either the United States nor any officer purporting to act on its behalf is named a party to the contract." Id. Under such circumstances, the United States does not assume any contractual obligations absent "action taken by the government or on its behalf indicating such a purpose." Id. The Supreme Court found no such evidence in Algoma and held that the defendant had incurred no obligations under the contracts by acting as an agent for the Klamath Indian Tribe. See id. at 422-23. Accordingly, the Supreme Court found that this court lacked jurisdiction to hear the case. See id. at 423.

More recently, in Moody v. United States, 931 F.3d 1136 (Fed. Cir. 2019), the Federal Circuit affirmed this court's decision dismissing a complaint in which the plaintiffs alleged breach of contract claims similar to those at bar. As the court explained, plaintiffs "leased various parcels on the Pine Ridge Indian Reservation in South Dakota for agricultural use. The question [before the court was] whether the United States was a party to those contracts." Id. at 1137-38. Each of the leases at issue in Moody "defined 'the Indian or Indians' as the 'LESSOR' and the [plaintiffs] as 'LESSEE.'" Id. at 1138. The leases also "stated that 'the Secretary of the Interior [was] acting for and on behalf of Indians,' and that the land being leased was 'lands and interest(s) held in trust or restricted status by the United States for the benefit of an Indian Tribe.'" Id.

The plaintiffs in Moody alleged, in part, that they were in privity of contract with the defendant, rendering the defendant liable for various alleged breaches of the leases. See id. at 1139-40. This court dismissed the contract claims for lack of jurisdiction, concluding that the defendant was not a party to the leases. See id. at 1140. On appeal, the Federal Circuit affirmed that ruling. The Circuit explained that:

> The theory that the United States is a party to the leases is contrary to the express contractual language, which distinguished between the Secretary/United States "acting for and on behalf of" the Indian landowners and the parties to the lease—the Oglala Sioux Tribe as the "LESSOR" and the [plaintiffs] as the "LESSEE."

Id. The Circuit then quoted the Supreme Court's decision in Algoma, stating that "the United States' entry into leases on behalf of an Indian landowning tribe and exercise of its trust responsibilities to Indian beneficial landowners 'does not necessarily involve the assumption of contractual obligations' 'in the absence of any action taken by the government or on its behalf indicating such a purpose.'" Id. (quoting Algoma, 305 U.S. at 421). The court also found that "there are no alleged facts that would support a conclusion that the United States was acting as anything other than a trustee when approving and managing the leases." Id. Accordingly, "[u]nder Algoma, the allegations of the complaint are legally insufficient to support a conclusion that the United States was

6

a party to the leases." Id.  Because the defendant was not a party to the leases, it had not "waived its sovereign immunity by approving and acting for the benefit of the Indian or Indians with respect to the leases." Id. at 1141.

Thus, under Algoma and Moody, in order to establish privity with defendant, plaintiff must demonstrate that the United States took some action indicating its intent to assume contractual obligations.  See Algoma, 305 U.S. at 421; Moody, 931 F.3d at 1140.  There is simply nothing in the contracts at issue, and plaintiffs alleged no facts surrounding the execution or performance of the contracts, that indicates such an intent.  After careful review of the contracts, the court has found no provision that speaks to any intent to assume the obligation to deliver irrigation water—on the part of defendant or any other entity.  The only provisions that address irrigation or water use read as follows:

(1) "It is understood and agreed that the tenant will pay all [Operation and Maintenance] assessments annually in advance on the due date preceding each irrigation season, including any penalties accruing against the above-described land under irrigation, and will pay all charges assessed in connection with any other improvement project or district within which the lands may be located, pursuant to existing or future orders or regulations of the Secretary."  ECF No. 34-1 at 5; ECF No. 34-2 at 5; ECF No. 34-3 at 5; ECF No. 34-4 at 5; ECF No. 34-17 at 5; ECF No. 34-18 at 9 (modifying language to reflect that the contract is a permit rather than a lease); ECF No. 34-21 at 5; ECF No. 34-25 at 5; ECF No. 34-26 at 5; ECF No. 34-29 at 5; ECF No. 34-32 at 5.

(2) "Tenant is required to make beneficial use of water delivered through the irrigation project."  ECF No. 34-1 at 6; ECF No. 34-2 at 6; ECF No. 34-3 at 6; ECF No. 34-4 at 6; ECF No. 34-17 at 6; ECF No. 34-18 at 10; ECF No. 34-21 at 6; ECF No. 34-25 at 6; ECF No. 34-26 at 6; ECF No. 34-29 at 6; ECF No. 34-32 at 6.

While these isolated references to irrigation and water use indicate that some agreement to deliver water may have existed, these contract provisions themselves do not create any rights to receive water, or any obligations to deliver it.  See San Carlos Irr. & Drainage Dist. v. United States, 877 F.2d 957, 959 (Fed. Cir. 1989) (noting that in order to recover for an alleged breach of contract, a plaintiff must establish, among other things, "an obligation or duty arising out of the contract" and a "breach of that duty").  Plaintiffs allege, throughout their complaint, that defendant is responsible for the WIP's failure to deliver water.  See generally ECF No. 34.  Even if that were true—a question the court does not answer here—the sources of those obligations are not the contracts at bar.

In their response to defendant's motion, plaintiffs urge the court to follow the reasoning in Oswalt v. United States, 85 Fed. Cl. 153 (2008).  See ECF No. 36 at 12-13.

As here, Oswalt involved the alleged right to receive irrigation water from the WIP on a combination of fee land and trust land.  See Oswalt, 85 Fed. Cl. at 156.  And as plaintiffs now allege, the court held in Oswalt that the "right to obtain irrigation water for trust lands is governed by the Lease Agreements."  Id.  The court ultimately concluded that the government, through the WIP, had breached an obligation to deliver irrigation water to certain Oswalt plaintiffs.  See id. at 160.

The court in Oswalt predicated its analysis on its conclusion that "[p]laintiffs [were] parties to express contracts with the United States granting them irrigation rights for the seven trust lands plaintiffs lease directly from the government."  Oswalt, 85 Fed. Cl. at 159 (citation omitted).  Here, however, the express terms of the contracts do not grant—or even address—irrigation rights.  And under binding Supreme Court and Federal Circuit precedent, the United States is not a party to the contracts.  To the extent that Oswalt is inconsistent with this conclusion, the court declines to follow its reasoning.[5]

Accordingly, the court concludes that plaintiffs are not in privity with defendant, and, as such, the contracts at issue do not establish this court's jurisdiction.

> B.  The Statutes and Regulations Cited by Plaintiffs Are Not Money-Mandating

Plaintiffs also allege, in the amended complaint, that this court has jurisdiction because several statutes or regulations are "implicated" in this case.  See ECF No. 34 at 2.  In their response to defendant's motion to dismiss they explain their position more clearly:

> As alleged in the Amended Complaint, the leases and permits entitled the plaintiffs to "a proportionate amount of irrigation water from the aggregate waters possessed and controlled by the [WIP] during the crop year of 2013."  This is because each lease and/or permit expressly incorporates—as an operative "part" of each cont[r]act—"the provisions of existing law and the regulations" and also "existing or future orders or regulations of the Secretary."

---

[5]  Plaintiffs also cite to an earlier, unpublished opinion in the Oswalt case to support their argument that the passing references to irrigation or beneficial use of water in the leases at issue create obligations for defendant to deliver water.  See ECF No. 36 at 14; ECF No. 7-1 at 3-17 (unpublished opinion, attached to defendant's first motion to dismiss).  The court has reviewed that decision, and acknowledges some similarity between the leases described therein and the contracts at issue here.  In light of the precedent described in the present analysis, however, the court's decision not to follow the reasoning in Oswalt, 85 Fed. Cl. 153, extends to that earlier decision by the court.

ECF No. 36 at 9-10 (citations omitted).

In the amended complaint, plaintiffs identify the following statutes and regulations as "implicated" here: "the Act of August 1, 1914 (38 Stat. 604); the Act of May 18, 1916 (39 Stat. 154); the Reclamation Act of 1902 (43 U.S.C. §§371-600e); the Act of March 6, 1906 (32 Stat. 53); 25 U.S.C. §§402a, 403, 415 & 3701-3702; 33 Stat. 595; and 33 Stat. 1094," and "25 C.F.R. §§162.101-.256." ECF No. 34 at 2. Plaintiffs offer a slightly different list in their response to defendant's motion to dismiss, identifying the following statutes and regulations as "incorporated within the leases and permits":

- 43 U.S.C. §377a, referring to "water users", "benefits of lands" and "any individual";

- 43 U.S.C. §384(b), referring to "an individual water user";

- 43 U.S.C. §372, referring to the "beneficial use" of an "appurtenant" perpetual water right;

- Act of Mar. 6 1906, Pub. L. No. 59-36, 34 Stat. 53-54, referring to "any person qualified to acquire water rights";

- Act of Aug. 1, 1914, Pub. L. No. 63-160, 38 Stat. 582, 604, specifying that the irrigation water must be delivered "at the northern boundary of said Yakima Indian Reservation"; and

- 25 C.F.R. §§ 403, 415, 3701-3702 & Subpart B §§162.101-.265, authorizing leases and permits to non-Indians.

Id. at 10.

"The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the [sovereign immunity] waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." Fisher, 402 F.3d at 1172 (citing United States v. Mitchell, 463 U.S. 206, 216 (1983); United States v. Testan, 424 U.S. 392, 398 (1976)). In other words, the source of substantive law, here the statutes and regulations cited by plaintiffs, must be "money-mandating" in order to establish this court's jurisdiction. Id.

"A statute or regulation is money-mandating for jurisdictional purposes if it 'can fairly be interpreted as mandating compensation for damages sustained as a result of the breach of the duties [it] impose[s].'" Id. at 1173 (quoting Mitchell, 463 U.S. at 217). A "fair inference" that the statute or regulation mandates compensation for damages sustained is sufficient to establish this court's jurisdiction. Id. at 1173-74 (citing United States v. White Mountain Apache Tribe, 537 U.S. 465, 472-73 (2003)).

According to plaintiffs, if a statute includes the word "shall" it is money-mandating.  See ECF No. 36 at 19 (citing Agwiak v. United States, 347 F.3d 1375, 1380 (Fed. Cir. 2003) (finding that a statute providing that remote duty allowance "shall be paid" was money-mandating)).  As defendant notes in its reply, however, in order for this general rule to operate, the word "shall" must refer to the payment of monetary compensation.  See ECF No. 40 at 11; see also, e.g., Rana v. United States, 664 Fed. App'x 943, 948 (Fed. Cir. 2016) (dismissing plaintiff's claim under the Military Whistleblower Protection Act, 10 U.S.C. § 1034, which provides that "[t]he Secretary concerned shall order such action . . . as is necessary to correct the record of a [prohibited] personnel action," for lack of jurisdiction, finding that the statute was not money-mandating); Perri v. United States, 340 F.3d 1337, 1340-41 (Fed. Cir. 2003) ("Unless the statute requires the payment of money damages, there has been no waiver of the government's sovereign immunity from liability for such damages, and the Court of Federal Claims would not have jurisdiction to entertain the claim.").

The only citations to the statutes or regulations identified by plaintiff that the court could find in the contracts at issue were references to the regulations described by plaintiffs as authorizing leases and permits to non-Indians.  See ECF No. 34-1 at 12 (citing 25 C.F.R. § 162.214), 15 (citing 25 C.F.R. § 162.203, § 162.234), 16 (citing 25 C.F.R. § 162.203, § 162.234, § 162.602, § 162.604); ECF No. 34-2 at 12 (citing 25 C.F.R. § 162.214), 15 (citing 25 C.F.R. § 162.203, § 162.234), 17 (citing 25 C.F.R. § 162.234, § 162.602, § 162.604); ECF No. 34-3 at 12 (citing 25 C.F.R. § 162.214), 14 (citing 25 C.F.R. § 162.207, § 162.209); ECF No. 34-4 at 12 (citing 25 C.F.R. § 162.214), 15 (citing 25 C.F.R. § 162.203, § 162.234), 16 (citing 25 C.F.R. § 162.203, § 162.234, § 162.602, § 162.604); ECF No. 34-17 at 12 (citing 25 C.F.R. § 162.214), 14 (citing 25 C.F.R. § 162.203, § 162.234), 16 (citing 25 C.F.R. § 162.234, § 162.602, § 162.604); ECF No. 34-18 at 3 (citing 25 C.F.R. § 162.203, § 162.234), 6 (citing 25 C.F.R. § 162.234, § 162.602, § 162.604), 14 (citing 25 C.F.R. § 162.214); ECF No. 34-21 at 12 (citing 25 C.F.R. § 162.214), 15 (citing 25 C.F.R. § 162.203, § 162.234), 17 (citing 25 C.F.R. § 162.234, § 162.602, § 162.604); ECF No. 34-25 at 12 (citing 25 C.F.R. § 162.214), 14 (citing 25 C.F.R. § 162.209); ECF No. 34-26 at 12 (citing 25 C.F.R. § 162.214), 14 (citing 25 C.F.R. § 162.203, § 162.234), 17 (citing 25 C.F.R. § 162.234, § 162.602, § 162.604); ECF No. 34-29 at 12 (citing 25 C.F.R. § 162.214), 14 (citing 25 C.F.R. § 162.203, § 162.234), 16 (citing 25 C.F.R. § 162.203, § 162.234, § 162.602, § 162.604); ECF No. 34-32 at 13 (citing 25 C.F.R. § 162.214), 15 (citing 25 C.F.R. § 162.234, § 162.602, § 162.604).  Because plaintiffs do not explain any other mechanism of incorporation, the court does not credit plaintiff's claims that the identified statutes are all "incorporated within the leases and permits," as "operative" parts of the contracts.  ECF No. 36 at 10.

Moreover, none of the statutes identified by plaintiff use the word "shall" in the context of mandating monetary compensation to which plaintiffs could be entitled.  The content of each cited statute or regulation is, in summary, as follows:

(1) 43 U.S.C. § 377a[6]: stating that "no funds appropriated . . . shall . . . be used for the particular benefit of lands" when certain conditions are met;

(2) 43 U.S.C. § 384(b): addressing extensions of time for payments due prior to March 1925, and providing that if the Secretary, in his or her discretion, adjusts the payment structure, "any penalties or interest which may have accrued in connection with such unpaid . . . charges shall be canceled";

(3) 43 U.S.C. § 372: stating, in its entirety, that "[t]he right to the use of water acquired under the provisions of this Act shall be appurtenant to the land irrigated, and beneficial use shall be the basis, the measure, and the limit of the right";

(4) Act of Mar. 6 1906, Pub. L. No. 59-36, 34 Stat. 53, 54: authorizing the disposition of certain land on the Yakima Indian Reservation, and stating, in the sentence quoted by plaintiff, that the Secretary of the Interior "is hereby authorized . . . to dispose of all land in excess of twenty acres . . . to any person qualified to acquire water rights," and referring to payments only in the context of fees or sale prices paid to the United States or to funds established by the United States;

(5) Act of Aug. 1, 1914, Pub. L. No. 63-160, 38 Stat. 582, 604: making appropriations for the BIA, and, in the section cited by plaintiffs, directing the Secretary of the Interior "to furnish at the northern boundary of said Yakima Indian Reservation . . . enough water . . . so that there shall be, during the low-water irrigation season, at least seven hundred and twenty cubic foot per second of water available when needed for irrigation";

(6) 25 C.F.R. §§ 162.101-.256[7]: more than sixty regulations addressing various aspects of leases and permits on Indian-owned land, none of which discuss a tenant's or permittee's right to the delivery of water;

---

[6] In the complaint, plaintiffs cite to 43 U.S.C. §§ 371-600e, but narrow the focus in their response to defendant's motion to dismiss to only 43 U.S.C. § 377a. The court, therefore, has not reviewed the entire Reclamation Act of 1902 in ruling on this motion. It is plaintiffs' responsibility to specifically identify the statutes under which they assert their rights; the court will not prosecute plaintiffs' case on their behalf.

[7] In their response, plaintiffs list 25 C.F.R. "Subpart B §§162.101-.265." See ECF No. 36 at 10. Subpart B includes §§ 162.101-.256. The court assumes plaintiffs' reference to ".265" is a typographical error.

(7)     25 U.S.C. § 402a[8]: limiting leases of land on an Indian reservation to terms of ten years, and including no mention of payments;

(8)     25 U.S.C. § 403: limiting leases of trust land to terms of five years, and stating that the "proceeds of any such lease shall be paid to the allottee or his heirs";

(9)     25 U.S.C. § 415: limiting the terms of certain leases on restricted land and noting a variety of additional restrictions on leases, but not using the word "shall" in reference to mandating any payments;

(10)     25 U.S.C. §§ 3701-3702: identifying the relationship between the United States and Indian tribes as "government to government," stating that the United States has a "trust responsibility" with regard the resources, and authorizing the Secretary of the Interior to "take part in the management" of Indian lands, and including no mention of payments;

(11)     33 Stat. 595, 596: addressing, in chapter 22, the Secretary of the Interior's authority "to sell or dispose of unallotted lands embraced in the Yakima Indian Reservation," setting out the conditions and particulars of such disposition, and discussing payment only of the purchase price for the land and collection, by the Secretary, of certain fees;

(12)     33 Stat. 1092[9]: appropriating money for various purposes that appear unrelated to the management of Indian lands or related water rights.

Because plaintiffs have failed to identify a money-mandating source of law, the court lacks jurisdiction to consider their claims for violations of the statutes and regulations plaintiffs have presented to the court.

        C.     The Court Can Not Exercise Jurisdiction as a Matter of Fairness

In addition to the arguments previously discussed, plaintiffs urge the court to exercise jurisdiction in this case because if it declines to do so, "the tenant-plaintiffs will have no remedy." ECF No. 36 at 5. According to plaintiffs, accepting defendant's

---

[8] In their response, plaintiffs list "25 C.F.R. §§ 403, 415, 3701-3702" as provisions incorporated into the contracts. See ECF No. 36 at 10. None of these provisions exist, and as such, the court assumes plaintiff meant to refer, as they do in the amended complaint, to "25 U.S.C. §§ 402a, 403, 415, & 3701-3702." See ECF No. 34 at 2.

[9] In their amended complaint, plaintiffs included a citation to "33 Stat. 1094." ECF No. 34 at 2. This appears to be a citation to a specific page of an appropriations bill that begins on page 1092. Accordingly, the court has reviewed 33 Stat. 1092.

arguments for dismissal would amount to giving defendant "a license to steal from the tenant-plaintiffs." Id.  Plaintiffs argue that the court "should look at the reality of the situation . . . rather than the twisted, gotcha way the defendant has self-servingly structured the contracts." Id.

Plaintiffs' frustration notwithstanding, this court is one of limited jurisdiction, and it is not empowered to expand that jurisdiction beyond its prescribed boundaries on the basis of what a litigant perceives as fair.  Because, with regard to their claims related to parcels on trust lands, plaintiffs have established neither contractual privity with defendant nor alleged entitlement to damages pursuant to a money-mandating statute, as detailed above, the court must dismiss those claims.

        D.        Multiple Plaintiffs Summary

This case involves multiple plaintiffs.  See ECF No. 34.  For proper case management and statistical purposes, plaintiffs shall create and maintain a summary, in the form of a chart, that accounts for each plaintiff added to or removed from this case, and the status of each plaintiff's participation in the case, as the contours of the case shift.  The chart shall include five columns of information:  (1) the first column shall identify the plaintiff either by name or pseudonym, if applicable; (2) the second column shall identify the state of residency of the plaintiff; (3) the third column shall identify the complaint in which the plaintiff was first included; (4) the fourth column shall state whether the plaintiff remains a party to the case; and (5) if the plaintiff is no longer a party to the case, the fifth column shall state the date on which the plaintiff was dismissed from the case, and include a citation to the court's case management/electronic case filing (CM/ECF) system for such dismissal.

IV.       Conclusion

Accordingly:

(1)       For the foregoing reasons, defendant's motion for partial dismissal, ECF No. 35, is **GRANTED**;

(2)       On or before **February 5, 2021**, the parties are directed to **FILE** a **joint status report** identifying for the court all claims related to parcels located on trust lands, to which this ruling applies, as well as plaintiffs' claims that remain viable, so that the court can dismiss and enter final judgment on the appropriate claims;

(3)       On or before **February 5, 2021**, plaintiffs are directed to **FILE** a **status report** attaching their multiple plaintiffs summary to include the required information for all plaintiffs who have been named in the complaints filed in this case.  Plaintiffs are further directed to **FILE** an **updated chart**

   following these same procedures within **seven days** of **adding or removing any plaintiffs** for the duration of this case.  Plaintiffs shall file all such charts under the "Status Report (Multiple Plaintiffs Summary)" docketing event in the court's CM/ECF system;

(4) On or before **February 19, 2021**, defendant is directed to **FILE** an **answer** to plaintiffs' remaining claims.

IT IS SO ORDERED.

                 s/ Patricia Campbell-Smith
                PATRICIA CAMPBELL-SMITH
                Judge